MR. JUSTICE MORRISON
delivered the opinion of the Court.
This is an appeal from a final judgment entered in the District Court of the Thirteenth Judicial District, Big Horn County, March 3, 1980. No issue is taken to the granting of the decree of dissolution or to respondent’s custody of the two children. Appellant challenges the disposition of the marital estate.
The parties were married June 7, 1968. Appellant filed his petition seeking dissolution of the marriage in April of 1978. Trial without jury was had June 12, 1979. Discovery was reopened upon respondent’s motion on July 9, 1979, and closed December 6, 1979. Decree of dissolution was granted on August 28, 1979.
From the beginning of the marriage until 1977, appellant was employed by Lippert Brick Contracting Co., Inc., Belleville, Illinois. The respondent, a registered nurse before the marriage, worked part-time outside the home and was principally responsible for supervision of the household and the children, Jennifer Lynn, age 11, and Nicole Lee, age 9.
*224 The major assets acquired during the marriage were the family home, with a net equity of $90,000, and stock options in Lippert Brick worth $36,000. The house was partially purchased with $34,000 received by the appellant in 1969 and 1971 from a family trust, and $31,000 of the stock options resulted from gifts made by appellant’s parents during the marriage.
The parties decided to leave Belleville, Illinois, in 1977. Appellant moved to Rosebud County, Montana, in April of 1977 while the respondent remained in Illinois to prepare their home for sale and to allow the children to finish the remainder of the school year. The stock options wre sold in May 1977 and the house in December 1977.
The planned construction business was not started immediately. Initially, appellant was hired by the Northern Cheyenne Tribe to supervise the construction of three buildings. The job lasted one year for which appellant was paid $30,000. The business venture was started early in 1978. Appellant purchased construction equipment with part of the money received from the sale of the stock options and the house.
Following completion of the buildings in April of 1978, appellant began working for Northern Cheyenne Erectors Incorporated (NCE), a private construction firm. He rented some of his equipment to NCE and loaned money to the struggling corporation. Although he earned $11,747.72 in wages from NCE and received $13,399 in rental income, the rental business and the collateral transactions with NCE proved to be a financial disaster. At trial appellant claimed he lost all of the money invested in the rental business. In November 1978, appellant left NCE. He is now an instructor at Dull Knife Memorial College, earnjng $17,000 per year.
Throughout this period the respondent has lived in Belleville, Illinois, where she is now employed earning approximately $12,000 per year.
Appellant has challenged the District Court’s findings regarding the (1) net worth of the marital estate, (2) liquidated stock options, *225 (3) family trust distributions, and (4) opportunity for future acquisition of capital assets and income.
We find the challenge to the finding of net worth of the parties to be determinative and, for reasons contained in the remainder of this opinion, feel we need not discuss the other issues raised by the appellant.
Appellant contends the District Court failed to determine the net worth of the parties at or near the time of the trial and that failure to do so was reversible error. After consideration of the unique circumstances presented by this case, we agree.
The District Court found the following:
“XVI. From April of 1977 until trial of this matter, petitioner took, from the marital estate of the parties to Montana, the following sums of money with the express purpose, as petitioner advised respondent to invest in his business:
“1. $26,000 was taken by petitioner in approximately May of 1977; this sum was taken from the proceeds of the consideration to forego his stock option with respect to Lippert Brick, that consideration being a total of $36,000.00
“2. $ 10,000.00 in November of 1977; this sum was obtained by putting a second mortgage on the family home;
“3. $60,000.00 in December of 1977, said sum being obtained from the proceeds of the sale of the family home.
“XVII. The Court finds that petitioner took the sum of $96,000,00 from the marital estate and brought it to Montana for the purpose, as he advised respondent, of investing in business.
“XX. The following amounts of money were left with respondent in Illinois, while petitioner was taking $96,000.00 of the marital estate to Montana to invest in business, as he told respondent:
“1. $10,000.00 in May of 1977, that being the balance of the $36,000.00 paid by Lippert Brick in consideration for relinquishing the stock option purchase right in petitioner with respect to Lippert Brick.
*226 “2. $10,000.00 in December of 1977, said sum being the balance of the proceeds left after all expenses of sale of the family home, to include mortgages and other notes, and petitioner’s taking of $60,000.00 of those proceeds to Montana to, as he told respondent, invest in business.
“XXXV. 3. That respondent shall have, in the form of a judgment against petitioner, the sum of $48,000.00, said sum representing one-half of the $96,000.00 of marital assets that petitioner has dissipated in Montana and is unable to account for, in any way, such lack of ability to account for said $96,000.00 the Court finds to be incredible and the Court does not believe the petitioner’s statement that he cannot account for said money and the Court is not impressed or persuaded by petitioner’s statement that the said $96,000.00 has simply been poured into bad business ventures, which statements petitioner is not able to support by anything that resembles clear or convincing evidence.”
A proper disposition of marital property in a dissolution proceeding requires a finding of the net worth of the parties at or near the time of the dissolution. Hamilton v. Hamilton (1980), 186 Mont. 282, 607 P.2d 102, 37 St.Rep. 247; Vivian v. Vivian (1978), 178 Mont. 341, 583 P.2d 1072, 35 St.Rep. 1359; Kramer v. Kramer (1978), 177 Mont. 61, 580 P.2d 439; Downs v. Downs (1976), 170 Mont. 150, 551 P.2d 1025. The basic reason for the rule is obvious; however, it is equally apparent that application of the rule is dependent upon the kinds of marital assets under consideration. The time for proper valuation cannot be tied to any single event in the dissolution process. The filing of a petition, trial of the matter, or even the granting of the decree of dissolution do not control the proper point of evaluation by the District Court.
The exercise of discretion by the District Court is necessary when determining the worth of marital assets which fluctuate in value. For example, the value of a particular common stock may change drastically during the course of a dissolution while the value of the family home or other personal property remains stable. Under such circumstances selection of a single evaluation *227 point for determining net worth of the parties could create an inequitable disposition.
Turning to the case at bar, the record before us unequivocally demonstrates the District Court considered appellant’s departure from Illinois in April 1977 as the time for evaluation of the marital estate. The implicit reasoning used by the District Court was manifestly based upon a presumption that appellant was untruthful at trial when he claimed the business was a disaster, and he no longer had the money he brought to Montana. Although no contrary evidence was proffered by the respondent or discovered during the six-month period following trial, the District Court found the $96,000 was in the marital estate and awarded the respondent a judgment against the appellant for $48,000. This was done despite the fact that the evidence showed the property had been lost in bad investments and simply did not exist. The District Court abused its discretion for three reasons.
First, the District Court lacked sufficient evidence to support its finding. While the District Court was in the best position to judge the candor or honesty of the appellant’s testimony, the findings and conclusions must still be supported by evidence and not merely lack of witness credibility. If appellant has committed fraud upon the court, the case may be justifiably reopened. Pilati v. Pilati (1979), 181 Mont. 182, 592 P.2d 1374, 36 St.Rep. 619.
Second, the District Court exceeded its authority under section 40-4-202, MCA, by awarding the respondent property in excess of the proven net worth of the estate. The statute mandates “[t]he court shall also consider the contribution or dissipation of value of the respective estates . . however, the District Court’s power does not extend beyond the existent estate. In other words the District Court may never award more than 100 percent of the marital estate.
Third, the award ignores fundamental legal principles of marital status; spouses possess mutual powers, obligations and interests which endure until lawfully modified or terminated. One of those powers is the power to freely contract with others regarding *228 martial property. Section 40-2-301 MCA. Appellant may have used poor judgment in his business transactions regarding the equity of the family home and the stock options; however, he lawfully possessed that power. The record does not indicate the respondent attempted to modify the appellant’s right to control and dispose of the property as he did or that she claimed breach of fiduciary obligation by the appellant.
In summary, we find the District Court abused its discretion in determining the net worth of the parties. Further the issues raised by appellant regarding the stock options and family trust distributions are hypothetical and thus moot unless new evidence can be produced. The order of the District Court is vacated, and this cause remanded for further proceedings consistent with this opinion.
MR. JUSTICES WEBER, DALY and SHEA concur.