No. 82-20

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN RE THE MARRIAGE OF
BARBARA J. KRAUSE,

Petitioner and Appellant,

and

LARRY KRAUSE,

Respondent and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable William Speare, Judge presiding.

Counsel of Record:

For Appellant:

Stephens & Cole, Billings, Montana

For Respondent:

Gary L. Beiswanger, Billings, Montana

---

Submitted on briefs: June 24, 1982

Decided: September 23, 1982

Filed: SEP 23 1982

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Thirteenth Judicial District, State of Montana, in and for the County of Yellowstone, dividing the marital assets of the parties. The wife appeals.

The parties were married on October 18, 1974, at Billings, Montana. It was the second marriage for both parties. There were no children born of the marriage, however, each of the parties has children from their previous marriage. Barbara Krause was trained to be a registered nurse but has not worked in that capacity since 1970. Larry Krause presently works as a petroleum engineer. In February of 1977, Barbara petitioned for a divorce. A decree of dissolution was signed by the District Judge on May 17, 1978. The decree did not make a property disposition, rather the District Court expressly reserved jurisdiction to make the disposition at a later date.

During the marriage the parties pooled their assets and made investments. Principally, they invested in oil and gas properties, three kinds of common stock, and real property located on the Boulder River. Only the above-mentioned assets were disputed at the trial; the parties having previously agreed on a division of the balance of the property.

By stipulation of the parties the District Court appointed a Special Master, a certified public accountant, for purposes of reporting to the Court on the following issues:

1. Ascertaining the net worth of the respective parties including a determination of all assets owned or acquired by the respective parties;

2. Determining those assets of the parties that were acquired during the course of the marriage and tracing the application of the premarital assets of the respective parties and their application for acquisition of marital assets or post-marital assets;

3. Providing a written report to the Court specifically determining the sources or derivation of the assets of the respective parties.

(2) whether the District Court erred by failing to value assets at the time of the dispositional hearing; and (3) whether there was a want of candor and disclosure regarding financial information relating to the oil and gas interests?

In relation to the first issue, the appellant contends that: (1) her husband's non-monetary contributions were wrongly considered as monetary contributions, and (2) that her non-monetary contributions were not considered. We do not agree with either assertion.

Regarding her first assertion she points to her husband's contribution to the oil and gas interests. During the marriage, Larry Krause was given the option to take a decrease in earnings in return for the opportunity to participate in working oil and gas interests. In 1975 he took a cut of $6.25 from his hourly consultants fee. Then in 1977 he took another cut of $2.90 per hour. These foregone earnings of the husband coupled with a cash contribution of the wife resulted in the acquisition of the oil and gas interests. The District Court found that the cost of acquiring these interests was $36,847; with $29,088 attributable to the husband's foregone earnings and $7,759 attributable to the wife's cash contribution.

The appellant/wife contends it is error to "give any monetary weight to non-monetary contributions. . ." In other words, she argues that the foregone earnings were non-monetary contributions and the District Court improperly assigned to them a dollar value.

In all of our previous cases when we spoke of non-monetary contributions we were referring to those contributions which are difficult to quantify in dollars and cents. For example, in Eschenburg v. Eschenburg (1976), 171 Mont. 247, 557 P.2d 1014, we noted that a marriage is much more than a business relationship, thus contributions to the 32-year marriage included raising four children, managing the household, entertaining at social activities, and volunteering services to activities

The Special Master completed his report on January 31, 1981. The report set out the original acquisition cost of the various properties and the contribution of each party. Also, the fair market value at or near the time of divorce is indicated and divided between the parties proportionate to the amount of their contribution at the time of acquisition. The pertinent part of the report is set out below:

|  | Total | Larry Krause | Barbara Krause |
|---|---|---|---|
| 2000 Shares Energy Resources Stock | $ 4,109.85 | 2,339.81 | 1,770.04 |
| Value 5/17/78 | 18,000.00 | 10,247.40 | 7,752.60 |
| 300 Shares Continental Group Stock | 8,599.68 | 2,010.89 | 6,588.79 |
| Value 5/17/78 | 9,375.00 | 2,191.88 | 7,183.12 |
| 100 Shares Simplicity Pattern | 1,639.50 | 383.37 | 1,251.63 |
| Value 5/17/78 | 1,375.00 | 321.48 | 1,053.52 |
| Boulder Property | 15,000.00 | 7,500.00 | 7,500.00 |
| Value 5/17/78 | 18,000.00 | 9,000.00 | 9,000.00 |
| Oil Properties | $ 36,847.63 | 29,088.49 | 7,759.14 |
| Value 1/1/79 | 72,414.00 | 57,163.61 | 15,250.39 |
| Total Cost Values | 66,169.66 | 41,322.56 | 24,869.60 |
| Total Fair Market Value @ 5/31/78 | $119,164.00 | 78,924.37 | 40,239.63 |

On March 3, 1981, the property distribution part of their case was heard before the District Court. The court made findings of fact and conclusions of law on June 22 and entered its judgment on September 16.

The court awarded 65 percent of the interest in the oil and gas properties to Larry Krause and the balance to Barbara Krause; each was awarded 50 percent of the Boulder River property; and two of the common stocks, Energy Resources and Continental Group, were split 65 percent and 35 percent to Larry and Barbara respectively. The remaining stock, Simplicity Pattern, was awarded to Barbara. The petitioner, Barbara Krause, was unsatisfied with this distribution and appeals to this Court.

The appellant raises three issues: (1) whether the District Court erred in it's consideration of non-monetary contributions;

related to the husband's career. In the case of Biegalke v. Biegalke (1977), 172 Mont. 311, 316, 564 P.2d 987, 990, non-monetary contributions of the wife included "wearing out her wedding band chopping wood, turning bales in the field, [and] chasing cattle on foot. . ." Again, in In Re Marriage of Kaasa (1979), 181 Mont. 18, 23, 591 P.2d 1110, 1113 non-monetary contributions were described as follows: "she helped move cattle out to pasture, hauled cattle by trucks, helped with branding, cooked for the crews, raised chickens and was responsible for the family garden."

We believe it is these kinds of contributions that the legislature had in mind when they enacted section 40-4-202, MCA, which mandates consideration of "contribution[s] of a spouse as a homemaker or to the family unit." We do not intend to precisely define non-monetary contributions. Such determinations are the province of the District Court. We hold that the District Court properly considered the respondent's foregone earnings as monetary contributions toward the acquisition of the oil and gas interests. Indeed, they are measured accurately in dollars and cents and it is difficult to conceive of them as anything but monetary.

The appellant further contends that her non-monetary contributions were not considered. At the trial the appellant testified that during the term of the marriage she maintained the house, kept it clean, provided meals, did the shopping, cared for the children, did ironing, helped with lawn care, and was active in social functions related to the husband's business. Obviously these contributions are substantial. However, we find no error. This Court has stated innumerable times that the District Court had broad discretion in dividing the marital estate. "The test for reviewing the District Court's discretion is: Did the District Court in the exercise of its discretion act arbitrarily without employment of conscientious judgement, or exceed the bounds of reason in view of all the circumstances?" Converse v.

- 5 -

Converse (1982), \_\_\_\_\_ Mont. \_\_\_\_\_, \_\_\_\_\_, 645 P.2d 413, 415, 39 St.Rep. 887, 889; Levandowski v. Levandowski (1981), \_\_\_\_\_ Mont. \_\_\_\_\_, 630 P.2d 239, 38 St.Rep. 1002; In Re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361; Zell v. Zell (1977), 174 Mont. 216, 570 P.2d 33. We find no error with the District Court in its evaluation of the various contributions to the marriage.

The appellant further contends "the court's findings did not address itself to the effect or the weight that was to be given Barbara's non-monetary contributions." Presumably the appellant considers such an omission as reversible error. We do not agree.

> "'Findings of fact and conclusions of law provide a foundation for the court's judgment. Marriage of Barron (1978), 177 Mont. 161, 580 P.2d 936. This foundation need not consist of a multitude of evidentiary facts, but the findings of fact must set forth a recordation of the essential and determining facts upon which the court rested its conclusions of law and without which the judgment would lack support. Jones v. Jones (1980), \_\_\_\_\_ Mont. \_\_\_\_\_, 620 P.2d 850, 37 St.Rep. 1973.'"

Converse, supra, 645 P.2d at 416, 39 St.Rep. at 890.

As the second issue, the appellant alleges error by the District Court in failing to consider the oil and gas interests properly. Error is alleged through a two-pronged argument, first, "for failure to consider the income that was derived from the marital oil and gas properties and, second; that the court erred in failing to consider any value for additional oil and gas assets acquired as a result of income earned from what was an agreed marital asset." This situation is one of first impression, consequently a more detailed view of the facts is necessary.

As noted above, when the parties were divorced in May of 1978 the District Court reserved jurisdiction to apportion the marital property. From the divorce to the hearing on property distribution, thirty-four months elapsed. During this thirty-four month period the husband had control over the oil and gas properties. The properties consisted of "working interests" in

twenty-three oil and gas wells, twenty of which were producing. The properties generated income and more "working interests" were purchased. Larry Krause testified that after the divorce he had purchased interests in ten to twenty additional wells. The funds to purchase these additional interests came from two sources; his income as a consultant, and from income generated from the original twenty producing wells. It was the wife's contention at the trial court that she be allowed to share equally in both the income realized from the original twenty wells and the additional interests purchased with the income of the original twenty. Before addressing this contention we find it necessary to evaluate the circumstances which generated this issue.

This problem arises because there was a time lapse of thirty-four months between the date of dissolution and the hearing on property distribution. The record does not provide any justification for such a lengthy delay. Even if the time delay had not caused complications in the valuation of the property, this situation should not occur. Here the parties were divorced for nearly three years yet they still owned property as if they were husband and wife.

A District Court may postpone disposition of the marital property. The authority is found in section 40-4-104, MCA, which reads in part:

> "The District Court shall enter a decree of dissolution if:
>
> ". . . the court has considered, approved, or made provision for . . . the disposition of property or provided for a separate, later hearing to complete these matters." (Emphasis added.)

The comments to this section state:

> "The phrase, 'considered, approved, or provided for' in subsection . . . (1)(d) is intended to confer upon the court the authority to refuse to make any award, if the evidence justifies an outright denial, as well as the authority to make such allotment as the facts require. To avoid any doubt, the court is authorized expressly to provide for a later hearing to complete action on these matters, if necessary." (Emphasis added.) Commissioner's Note, Annotations to MCA, Title 40, Family Law, p. 49.

Once before we have focused on the language of subsection (1)(d). In Miller v. Miller (1980), ____ Mont. ____, ____, 616 P.2d 313, 318, 37 St.Rep. 1523, 1528; the appellant claimed that it was error to separate the dissolution aspect of the marriage from the property disposition. This Court denied that claim and stated: "the interests of justice and judicial economy are best served by giving District Courts broad discretion in the conduct of their proceedings and the severance of the various elements of dissolution decrees."

Nonetheless we do not view the statute and comments as allowing an indefinite postponement of the property disposition. The language is straightforward. The court can postpone matters only if it has "provided for a separate later hearing." In our view, "provide for" means to make arrangements for. Making arrangements includes the setting of a date or a time period which is agreeable between the parties. To do otherwise is to unnecessarily punish the parties. An indefinite postponement merely places the parties in limbo and creates appellate problems.

Furthermore, a postponement should not be a routine matter. The comments note that postponement is authorized "if necessary." Certainly there are cases where postponement of property distribution or other matters is in the best interests of the parties. However, it should be clear that delay is "necessary." Present Colorado law suggests a balanced approach. Their statute also allows District Court discretion in postponement of property distribution, yet that discretion is limited. Their comparable version of our subsection (1)(d) reads:

> "The district court shall enter a decree of dissolution of marriage when:
>
> "(b) In connection with every decree of dissolution . . . the court shall consider, approve, or make provision for . . . the disposition of property; but the entry of a decree with respect to . . . disposition of property may be deferred by the court until a time subsequent to the decree of dissolution of marriage upon a finding that such deferral is necessary in the best interests of the

- 8 -

parties." Colo.Rev.Stat. section 14-10-106 (1973).

This requires the Colorado courts to make specific findings of necessity before deferring property distribution. "It is clear that the reason for the requirement for a specific finding on this issue is to prevent unwarranted delays in dividing property in dissolution of marriage cases." In Re Marriage of Rose (1977), 40 Colo.App. 176, 177, 574 P.2d 112, 113.

In summary, we encourage District Courts to conclude all matters upon entry of a decree of dissolution. In those unusual cases where the trial court is not able to provide for the property disposition at the time of dissolution, the District Court must make written findings that a postponement of the property disposition is in the best interests of the parties. Furthermore, the District Court must "provide for a separate later hearing" by either setting a specific hearing date to complete matters or by setting a time period within which the parties must come before the court for final disposition.

We do not intend to set precise time limits. Such decisions are within the discretion of the District Court. Furthermore, we do not hold that an unwarranted delay will result in a faulty District Court judgment. However, in this case, the unwarranted delay coupled with valuation factors resulted in an abuse of discretion. Part of the problem results from the District Court's timing of the property valuation. The District Court relied on the Special Master's report which valued the oil and gas interests effective January 1, 1979, seven months after the dissolution. All of the other contested property was valued effective May 17, 1978, the date of dissolution.

As to the time of valuation we have said, "[t]he time for proper valuation cannot be tied to any single event in the dissolution process. The filing of a petition, trial of the matter, or even the granting of the decree of dissolution do not control the proper point of evaluation by the District Court." Lippert v. Lippert (1981), _____ Mont. _____, _____, 627 P.2d 1206,

- 9 -

1208, 38 St.Rep. 625, 628. Furthermore, we indicated that there can be several valuation points rather than one single point for all of the property. This is so because some assets may fluctuate in value. Although Lippert did not involve a post-dissolution property distribution the same rule applies and extends beyond the dissolution date. Thus, in these facts, the time of the dispositional hearing on March 3, 1981, was a feasible and allowable point to determine valuation. Furthermore, it was the preferable point in view of the often stated rule that the parties' net worth must be determined at or near the time of the divorce. See Hamilton v. Hamilton (1980), _____ Mont. _____, 607 P.2d 102, 37 St.Rep. 247; Vivian v. Vivian (1978), 178 Mont. 341, 583 P.2d 1072; In Re Marriage of Kramer (1978), 177 Mont. 61, 580 P.2d 439; Downs v. Downs (1976), 170 Mont. 150, 551 P.2d 1025. The crux of the above-cited cases is that property valuation should occur at the time of property distribution, or in other words, emphasis is on current valuations. This reasoning is evident in Herring v. Herring (1979), _____ Mont. _____, _____, 602 P.2d 1006, 1007, 36 St.Rep. 2052, 2054, where we remanded since "there was no attempt to place a present, fair market value upon these items or to determine the net worth of the parties at the time of their divorce." Additionally, in Evert v. Evert (1982), _____ Mont. _____, 645 P.2d 417, 39 St.Rep. 860, we remanded to the District Court for failure to "place current values on the parties' assets." In that case the District Court awarded a house and a 2½ acre parcel of land based only upon the equity built by the parties rather than any valuation figure.

From the foregoing discussion several principles are evident; (1) proper valuation is not tied to a specific event, (2) there may be more than one valuation point, depending upon the kind of property involved, and (3) preferably, valuation should occur at the time of distribution, or, stated another way, present fair market values should be used. In given fact situations, these

principles conflict with each other. When one considers the many different kinds of marital property and the associated problems of valuation it is obvious that a hard and fast rule should not be imposed. Thus, we cannot rule that District Courts must always value property at the time of distribution. Time and time again we have said it is the District Court that has broad discretion in property distribution. In Sell v. Sell (1981), ____ Mont. ____, ____, 630 P.2d 222, 224, 38 St.Rep 956, 958, we stated: "[t]his court has a limited scope of appellate review and will not intervene except when the District Court has departed substantially from the norms of equity." "The exercise of discretion by the District Court is necessary when determining the worth of marital assets which fluctuate in value." Lippert, 627 P.2d at 1208, 38 St.Rep. at 628. In this case we find that the District Court abused its discretion in the valuation of the contested marital property. The record indicates substantial differences in the value of some of the property from the District Court's valuation dates to the time of the dispositional hearing. For example, the Energy Resources stock was valued at $18,000 on May 17, 1978, the date of dissolution. The District Court used this value in its determination. Testimony at the dispositional hearing showed its present value at $31,000. Failure to recognize these kinds of value fluctuations is error. On remand the District Court should accept evidence on current valuations of all of the contested marital property. Specifically, the appellant alleges error for the District Court's failure to consider both the oil and gas income and the additional acquisitions. In appellant's view, these assets are part of the marital estate. We agree.

The case of Lippert is cited in support of this contention. There the husband took $96,000 of the marital property to invest in a business. The business went bad and the investment was lost. The District Court considered the $96,000 as part of the marital estate even though it was not in existence at the time of

dissolution. The judgment ordered the husband to pay the wife a sum of $48,000, one-half of the amount that was lost. We reversed stating that "the award ignores fundamental legal principles of marital status; spouses possess mutual powers, obligations and interests which endure until lawfully modified or terminated. One of those powers is the power to freely contract with others regarding marital property." Lippert, 627 P.2d at 1209, 38 St.Rep. at 629. That reasoning applies to this situation. The appellant was never divested of her interest in the marital property. She retained a mutual interest even though the respondent was in control of the property. It cannot be disputed; the appellant held an interest in income-generating property. That income, of which she had an interest, was reinvested to acquire more assets. It follows that she also has an interest in those additional assets. In effect, the District Court failed to value all of the marital assets, consequently the case must be remanded. Tefft v. Tefft (1981), _____ Mont. _____, 628 P.2d 1094, 38 St.Rep. 837; Hamiton v. Hamilton (1980), _____ Mont. _ _ _ _ , 607 P.2d 102, 37 St.Rep. 247.

The record indicates that the additional interests were purchased in part from the respondent's own earnings. Also, it may be that the respondent acquired the additional interests through careful and prudent management. These contributions deserve careful consideration.

Finally, the appellant contends that there was a lack of candor and disclosure on the part of the respondent in failing to or intentionally refusing to provide information concerning the additional oil and gas interests. The record does not substantiate such a claim. Presumably the appellant hoped to get this information on the day of trial through the testimony of Robert Nance, the respondent's business associate. It was learned the day before trial that Mr. Nance could not attend, thus hurried arrangements were made to take his deposition. During the deposition the following exchange occurred:

"Q. Has Larry Krause acquired oil and gas interests in addition to these that are set out in these three exhibits that are before you since the date of the last acquisition of the interests listed there? A. Oh, boy, I would say yes, but I don't know that for a fact because I don't keep up with Larry's endeavors as far as our participation is concerned. I would have to go back and check our blow sheets as to who got what in what wells. I don't keep that right on the tip of my tongue.

"Q. Who would have access to those records to determine the additional interests that Larry would have acquired, say since May of 1978? A. Well, my bookkeeper would.

"Q. What is her name? A. Marlene Conrad."

Then, the morning of the trial, Mr. Nance's bookkeeper was served with a subpoena duces tecum. However, the bookkeeper did not appear with the desired documents because she felt she did not have the authority to produce the records of Mr. Nance. The appellant further sought this information from the respondent during trial where the following exchange occurred:

"Q. Have you acquired additional producing interests from income that was generated from those original 20 wells? A. Income from those wells and income that I've made on consulting, yes. I have acquired additional wells.

"Q. Do you know how many additional interests you have acquired? A. Not just offhand. I would be guessing what it is, because I really don't know for sure.

"Q. Would it be more than 20? A. No.

"Q. Would it be less than ten? A. I would say between 10 and 20, somewhere in that range."

These facts taken together certainly do not substantiate a lack of candor or disclosure. A review of the District Court's file certainly shows otherwise. Similar information was sought by the appellant early in the action through the use of interrogatories. The respondent's answers were very complete in those early instances and there is nothing to suggest that at trial he would not have been as complete given adequate time to prepare the information.

The judgment is vacated and remanded for further proceedings.

- 13 -

_____ John Conway Harrison
Justice

We concur:

_____ James B Daly

_____ Daniel J Shea

_____

_____ John C Sheehy
Justices