No. 84-09

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE MARRIAGE OF

PIUS H. ROHRICH,

Petitioner and Appellant,

**and**

MARIAN ROHRICH,

Respondent and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John F. Iwen, Great Falls, Montana

For Respondent:

Howard F. Strause, Great Falls, Montana

Submitted on Briefs: March 23, 1984

Decided:

Filed: JUN 2 8 1984

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This case comes on appeal from two orders of the District Court, Eighth Judicial District, Cascade County, ordering the husband to pay the wife $1,000 initially and $1,250 per month thereafter for temporary maintenance until all issues were resolved in the dispute, and designating March 3, 1983 as the valuation date of the coroporate stock of the parties for the purpose of dividing the marital assets. The District Court also gave the wife the right to choose which stock she would receive as part of the parties' property division. We affirm.

The parties were married on June 28, 1948. The husband filed a petition for dissolution on March 30, 1982. On May 28, 1982, the District Court ordered the husband to pay the wife $750 per month during the pendency of the dissolution proceedings and excluded the husband from the family home. On August 16, 1982, the District Court found the husband in contempt for failing to abide by its order of May 28, 1982. The record indicates the husband had broken into the family home and threatened the wife with a revolver. The petition for dissolution came on for hearing on November 18, 1982, and on March 3, 1983, the District Court entered its findings of fact and conclusions of law. The findings and conclusions that are pertinent to this appeal included the following; that the wife was unable to support herself; the husband worked steadily for Washington Construction Company and earned $64,196.95 in 1981; taking into consideration the financial resources of the parties, the time necessary for the wife to be trained and educated

for employment, the age of the parties and the husband's ability to pay, the wife should receive $750 per month for three years; due to the violent nature of the parties' relationship it would be best if there was no future contact between the parties; the parties owned numerous shares of corporate stock; in return for the wife giving up her right to maintenance payments the wife would receive the first $25,000 in value of stock and if the parties could not agree on the value of the stock it would be sold and divided accordingly; it was not necessary to award the wife maintenance because she was being granted a greater share of the marital assets; the parties would execute all instruments necessary to carry out the provisions of the decree; the wife was awarded a $27,837 loan that had been made to the parties' children. Neither party appealed from the decree of dissolution.

On March 13, 1983, the wife made a motion that the District Court hold the husband in contempt for failing to comply with the decree of dissolution. The wife's motion was supported by an affidavit in which the wife alleged that the $27,837 that had been loaned to the children and which was awarded to her by the decree of dissolution had been transferred to the parties' son who lived outside Montana. The wife also alleged that she had not received her $750 maintenance payment for the month of February, 1983, as required by the District Court's order of May 28, 1982. On June 10, 1983, the parties entered into a stipulation whereby the husband would receive the asset denominated "Loan to children . . ." in return for which the wife would be awarded an equal amount in value of corporate stock.

Subsequently, the parties could not agree upon a date for valuation of the stock. The wife argued the stock should be valued as of March 3, 1983, the date of the decree of dissolution, whereas the husband argued a later date should be used. As a result, the wife moved the District Court on June 20, 1983, to hold a hearing to determine the date of valuation of the corporate stock for purposes of distribution. At about the same time the wife asked the District Court to require the husband to pay her immediately the sum of $1,000 until a hearing could be held on the matter. According to her accompanying affidavit the wife alleged she had not received any maintenance payments since January, 1983; the wife had been forced to live on welfare benefits; and the husband had encouraged the parties' children not to cooperate in the division of marital assets by not signing stock transfer orders. Based upon the wife's affidavit, the District Court on August 12, 1983, issued an ex parte order requiring the husband to immediately pay the wife $1,000 for temporary maintenance.

Hearings were held on July 19 and September 16, 1983, for the purpose of determining the date of valuation of the corporate stock. From testimony presented at those hearings, the District Court issued an order on September 29, 1983, in which it determined that the stock would be valued as of March 3, 1983, the date the District Court handed down the original decree of dissolution. In its order the District Court stated that to value the stock on any other date "would have the effect of undermining the equities which [the District Court] built into its order." The District Court pointed out that the parties had entered

into an agreement whereby the husband had agreed to receive as an asset the loan to the children in the amount of $28,489 (the original amount plus interest) in exchange for giving the wife $28,489 in value of stock. The District Court had been informed that the children's loan had been invested in an interest bearing account and therefore the husband could collect the interest on the $28,489 from March 3, 1983. The District Court noted that to allow the husband to also receive the benefits from any increase in the value of stock since March 3, 1983 would in effect give him a double benefit. The District Court said it took into consideration the fact that the husband was gainfully employed and had a much greater ability to build up an estate before he retired than did the wife. Thus, the District Court ordered the stock immediately divided with the wife entitled to choose $25,000 and another $28,489 in stock as that stock was valued on March 3, 1983. It is from that order and the August 12, 1983 order granting the wife temporary maintenance that the husband appeals.

The husband raises two issues on appeal:

(1) Did the District Court have jurisdiction on August 12, 1983 to award ex parte temporary maintenance to the wife?

(2) Did the District Court have jurisdiction on September 29, 1983 to designate March 3, 1983, as the valuation date of the corporate stock and grant the wife the right to choose the corporate stock she would receive?

Initially, the husband asserts the District Court was without jurisdiction to award the wife temporary maintenance on August 12, 1983 because a court cannot amend a judgment

under Rule 52(b), M.R.Civ.P. without holding an evidentiary hearing.

On May 28, 1982, the District Court ordered the husband to pay $750 per month during the pendency of the proceedings. The husband failed to comply with that order and was held in contempt on August 16, 1982. After the decree of dissolution was entered on March 3, 1983, the wife, by affidavit, indicated the husband had again failed to make a temporary maintenance payment and, in addition, had acted to deprive her of the $27,837 awarded her in the decree of dissolution. Thus, the District Court was faced with a situation in which the intent of its orders, i.e., that the wife be maintained pending final disposition of the matter, was not being carried out. Accordingly, it was within the District Court's discretion to grant the wife temporary maintenance. In State ex. rel. ~~Kassa~~ Raase v. District Court (1978), 177 Mont. 547, 582 P.2d 772, this Court said:

> "The Uniform Marriage and Divorce Act now in effect in Montana gives the District Court authority to provide temporary orders for support and maintenance to a spouse. Section 48-318, R.C.M. 1947 [now Section 40-4-106, MCA]. Nothing in that Statute restricts the power of the District Court to orders made before judgment. In fact, it is specifically provided that the granting of such an order does not prejudice the rights of the parties at 'subsequent hearings in the proceeding,' which would include an appeal."

Thus, the facts of this case indicate the District Court had jurisdiction to grant the wife temporary maintenance on August 12, 1983.

Next, the husband argues the District Court was without jurisdiction on September 29, 1983 to designate March 3, 1983 as the valuation date of the stock and giving

-6-

the wife the right to choose her stock. The husband asserts the March 3, 1983 decree of dissolution was a final judgment and could not be amended or modified except by motion made within the time limitations set forth in the Montana Rules of Civil Procedure.

First, we note that the husband participated in the July 19, 1983 and September 16, 1983 hearings in which the District Court determined the date of valuation for the corporate stock. Second, it has been held that the interpretation or clarification of a judgment ambiguous or uncertain upon its face involves neither an amendment of its terms nor a challenge to its validity. Stieler v. Stieler (Minn. 1955), 70 N.W.2d 127. In the present case, the District Court's order of September 29, 1983 clarified the March 3, 1983 decree of dissolution. The March 3, 1983 decree of dissolution failed to designate the date upon which the corporate stock would be valued and both parties moved the court to determine the appropriate date of the valuation. The District Court properly relied upon Lippert v. Lippert (Mont. 1981), 627 P.2d 1206, 38 St.Rep. 625 and Krause v. Krause (Mont. 1982), 654 P.2d 963, 39 St.Rep. 1809, in holding that the assets should be valued at the time of the dissolution hearing. Moreover, the District Court did not modify or amend the decree of dissolution by authorizing the wife, in the September 29, 1983 order, to choose her stock. Again, this was a clarification of the original decree of dissolution in which it was stated that the wife had no vocational skills and was not qualified for even the most minimal jobs. As this Court stated in Thomas v. Thomas (Mont. 1980), 617 P.2d 133, 37 St.Rep. 1710, " . .

. since neither party made a timely appeal of the original findings and decree, the parties are bound by it, unless an appropriate proceeding is maintained subsequent hereto for clarification of the findings and decree." Thomas, supra at 1714.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices