No. 02-495

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 99

IN RE THE MARRIAGE OF
PATSY A. BARTSCH,

       Petitioner and Respondent,

   and

ALVIN E. BARTSCH,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade, Cause No. BDR 2001-151
                The Honorable Julie A. Macek, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Steven Potts, Thompson, Potts, & Donovan, P.C., Great Falls, Montana

       For Respondent:

              Marcia Birkenbuel, Attorney at Law, Great Falls, Montana

Submitted on Briefs:  May 13, 2003

Decided:  April 20, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Alvin Bartsch (Alvin) appeals the judgment of the Eighth Judicial District Court, Cascade County, dividing equally the marital estate established with his former wife, Patsy Bartsch (Patsy).

¶2     We affirm in part and reverse and remand in part for further proceedings consistent with this Opinion.

¶3     We address the following issues:

¶4     1.     Did the District Court err in finding that an equitable distribution of marital property automatically required an equal distribution?

¶5     2.     Was the District Court's finding of fact valuing each share of the Bartsch Farms, Inc. stock at $3.62 based on substantial evidence?

¶6     3.     Did the District Court err in awarding Patsy the cash surrender value of Alvin's life and annuity policies?

¶7     4.     Did the District Court abuse its discretion in awarding Patsy $119,773.50?

¶8     5.     Was the District Court's granting of a security interest in Alvin's Bartsch Farms, Inc. shares contrary to the law?

### FACTUAL AND PROCEDURAL BACKGROUND

¶9     Alvin and Patsy were married for 30 years before their marriage ended in a dissolution.  Throughout the years, Alvin worked on his family's farm, known as Bartsch Farms, Inc., while Patsy worked as a homemaker, caring for their two children.

¶10     Before he married Patsy, Alvin acquired 24,502 shares in Bartsch Farms, Inc. by gift from his parents.  After he married Patsy, Alvin acquired an additional 83,015 shares by gift from his parents, while Patsy acquired 3,012 shares.  The net value of Bartsch Farms, Inc.

2

was $985,643.47.

¶11 At their dissolution bench trial, the District Court received testimony regarding Alvin and Patsy's marital assets. Ultimately, the District Court, in its findings of fact and conclusions of law, awarded Patsy and Alvin each $335,240.50 in value from their $670,481.00 marital estate. In its findings, the District Court stated specifically that:

9. The fair market asset value of the [Bartsch Farms, Inc.] shares is $3.62 per share.

10. Ms. Bartsch contributed to the operation of the farm and her nonmonetary contributions as a homemaker facilitated the maintenance of the farming operation. As such, the Court finds that it is equitable under the provisions of 40-4-202(1), MCA, to award Ms. Bartsch the value of an equitable share of stock of Bartsch Farms.

17. The Court finds that the following [in pertinent part to this appeal] is an equitable division of the marital estate:

Reliastar life insurance cash value $4,256.00
Life Investors annuity surrender value $7,582.00
Life investors life insurance cash value $6,764.00
State Farm life insurance cash value $16,411.00

22. The marital estate shall be divided as set out in Finding Number 17 above. Mr. Bartsch shall have the option of paying Ms. Bartsch the $119,773.50 cash settlement in equal monthly installments, with interest at the rate allowed for judgments, over a period of twenty years (240 months), commencing on the first day of the month following entry of this order, and continuing on the first day of each month thereafter until the $119,773.50 plus accrued interest is paid in full. Ms. Bartsch shall retain a security interest in the Bartsch Farm stock until the $119,773.50 plus accrued interest is paid in full.

3

¶12 Alvin now appeals the above-quoted findings of fact and decree from the District Court.

## STANDARD OF REVIEW

¶13 We review a district court's findings of fact regarding a division of marital assets to determine whether the findings are clearly erroneous. *In re Marriage of Gerhart*, 2003 MT 292, ¶ 15, 318 Mont. 94, ¶ 15, 78 P.3d 1219, ¶ 15. Findings are clearly erroneous if: (1) they are not supported by substantial evidence; (2) the district court misapprehended the effect of the evidence; or (3) the district court made a mistake. *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d 441, ¶ 17. We will affirm a district court's division of property, absent clearly erroneous findings, unless we identify an abuse of discretion. *Gerhart*, ¶ 16. We review a district court's conclusions of law to determine whether the conclusions are correct. *In re Marriage of Pfeifer*, 1998 MT 228, ¶ 9, 291 Mont. 23, ¶ 9, 965 P.2d 895, ¶ 9.

## DISCUSSION

¶14 **1.    Did the District Court err in finding that an equitable distribution of marital property required an equal distribution?**

¶15 Alvin argues that the rule is well settled that equity in a marital distribution case does not necessarily mean equality. Because his shares were gifted to him alone and because Patsy did not substantially increase the value of the farm, Alvin contends that Patsy is not entitled to "one-half of the amount at which the [District] Court valued Alvin's shares in Bartsch Farms, Inc. . . . ." As such, he argues that "[t]he testimony and exhibits introduced

4

at trial provide no substantial basis for an equitable share of the stock, let alon[e] an across-the-board 50/50 division of property."

¶16 Patsy argues that because "Alvin is obviously in control of the Bartsch Farms Corporation," "[a]warding him the stock and cash . . . to compensate her for the value of the stock is the only equitable manner to divide the marital estate." As such, Patsy contends that the District Court did not abuse its discretionary authority in dividing the marital estate, as it "obviously" considered the factors delineated under § 40-4-202, MCA, regarding equitable apportionment of a marital estate.

¶17 Section 40-4-202(1)(a)-(b), MCA, states in pertinent part that:

(1) . . . . In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent . . . the increased value of property acquired prior to marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property. . . .

¶18 We noted in *In re Marriage of Steinbeisser* that the district court erred when it calculated the appreciation in one spouse's premarital assets and awarded the other spouse two-thirds of that appreciated asset value without considering the other spouse's contribution to the value appreciation of those assets. *In re Marriage of Steinbeisser*, ¶ 54. On that basis, we remanded the case to the district court for a reevaluation and distribution of the parties' marital assets. *In re Marriage of Steinbeisser*, ¶ 69.

¶19 Here, the District Court found that:

5

Ms. Bartsch contributed to the operation of the farm and her nonmonetary contributions as a homemaker facilitated the maintenance of the farming operation. As such, the Court finds that it is equitable under the provisions of 40-4-202(1), MCA, to award Ms. Bartsch the value of an equitable share of stock of Bartsch Farms.

¶20 Nowhere in its above finding did the District Court discuss its reasoning behind how Patsy, as a homemaker "facilitated the maintenance of the farming operation." Therefore, we reverse the District Court's findings on this issue. We remand this issue to the District Court for findings on whether and to what extent Patsy actually contributed to the preservation or appreciation of the gifted property under § 40-4-202, MCA, and under our holding in *In re Marriage of Steinbeisser* regarding this similar issue.

¶21 **2. Was the District Court's finding of fact valuing each share of the Bartsch Farms, Inc. stock at $3.62 based on substantial evidence?**

¶22 Alvin argues: (1) that the District Court had insufficient evidence to arrive at the $3.62 figure for the stock; and (2) that use of a fair market asset value is contrary to law, as "[t]he shares should be valued based upon their 'present fair market values.'"

¶23 Patsy argues that the District Court "applied the appropriate valuation technique," in finding the value of the Bartsch Farms Corporation stock, especially given that "Alvin admitted that the values indicated for the corporate assets in his Exhibit . . . were based upon fair market value." We agree.

¶24 We have held that there exist "three essential principles of determining valuation of marital property subject to dissolution." *In re Marriage of Pospisil*, 2000 MT 132, ¶ 44, 299 Mont. 527, ¶ 44, 1 P.3d 364, ¶ 44. These principles include the fact that: "(1) proper

6

valuation is not tied to a specific event, (2) there may be more than one valuation point, depending upon the kind of property involved, and (3) preferably, valuation should occur at the time of distribution, or, stated another way, present fair market values should be used." *In re Marriage of Krause* (1982), 200 Mont. 368, 379, 654 P.2d 963, 968. In addition, we noted that "these principles are tempered by the rule that a district court has broad discretion in property distribution." *In re Marriage of Pospisil*, ¶ 44. Indeed, we have said that "[t]he time for proper valuation cannot be tied to any single event in the dissolution process," as "there can be several valuation points rather than one single point for all of the property." *In re Marriage of Krause*, 200 Mont. at 378, 654 P.2d at 968. Further, "[a]s long as the valuation of property in a dissolution is reasonable in light of the evidence submitted . . . [this Court] will not disturb the finding on appeal." *In re Marriage of Hanni*, 2000 MT 59, ¶ 22, 299 Mont. 20, ¶ 22, 997 P.2d 760, ¶ 22.

¶25 Here, regarding the value assigned to the shares of stock, Alvin testified to the following:

> Q: Now how did you arrive at the figure of $3.00 value per share of stock in Bartsch Farms?
>
> A: When it [Bartsch Farms] was incorporated it started as dollar because of inflation was reflected on that paper you had there, the next year it went to $2, then it was increased to $3 to keep up with inflation, so it was a fair value.
>
> Q: Was this a calculation that was made each year to determine the fair market value of the stock?
>
> A: Yes.

7

¶26    On cross-examination, Alvin provided the following additional testimony regarding the stock value:

Q:    So you got a book value for your shares, that's what the $3 a share was. That's what you carried on the books?

A:    Right.

Q:    If you were to actually value it as of fair market value of the assets owned by the corporation you determined it would be $3.62 a share?

A:    Possibly. When we purchased the shares from my nephew and nieces, we paid less than $3. We paid $2.65 a share for that.

Q:    When was that?

A:    The year that Patsy got hers. It was '94, was it?

Q:    This exhibit [Respondent's Exhibit 5 showing number of shares, book values, and asset values for Alvin and Patsy] is based upon current fair market value; is that right?

A:    Right.

Q:    You prepared this Respondent's Exhibit 5?

A:    I believe so.

¶27    As the above-quoted language shows, based on Alvin's testimony, the District Court, in its broad discretion, accepted Alvin's testimony that the value of the shares was based on the current fair market value, finding the same--i.e., "[t]he fair market asset value of the shares is $3.62 per share." Under our holdings in *In re Marriage of Krause* and *In re Marriage of Hanni*, such valuation is both preferable and reasonable. Therefore, we hold that the District Court did not err in valuing the Bartsch Farms, Inc. shares of stock at $3.62

8

per share.

**¶28  3.  Did the District Court err in awarding Patsy the cash surrender value of Alvin's life and annuity policies?**

¶29  Alvin argues that because the life and annuity policies are contracts based upon Alvin's life expectancy, he has no cash or surrender value available to him currently to give to Patsy. In addition, Alvin argues that the insurance and annuity companies are not parties to this lawsuit. Hence, the District Court did not have jurisdiction over them to make findings of fact and conclusions of law regarding the value of their policies.

¶30  Patsy argues that Alvin's contention that there is "no cash value or surrender value available to him" regarding the life and annuity policies is "contrary to Alvin's own testimony . . . and the exhibits he submitted" concerning those values. As such, Patsy argues that the District Court acted within its discretionary authority in awarding to Patsy the cash and surrender value of the policies. In addition, Patsy contends that Alvin's jurisdictional argument "is without merit," as a district court does not need jurisdiction over an insurance or annuity company to enter an order.

¶31  Again, under § 40-4-202, MCA, "[i]n a proceeding for dissolution of a marriage . . . the court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both."

¶32 Here, the District Court awarded Patsy the following cash and surrender values:

| | |
|---|---|
| Reliastar life insurance cash value | $4,256.00 |
| Life Investors annuity surrender value | $7,582.00 |
| Life investors life insurance cash value | $6,764.00 |
| State Farm life insurance cash value | $16,411.00 |

¶33 Alvin identified the Exhibits from which the above-quoted Reliastar and Life Investors values came as the "current, or as close to current, cash values of investments." These "investments" were in Alvin's name, and were admitted into evidence without objection from Alvin. The District Court found that the State Farm life insurance was a marital asset, valued as quoted above.

¶34 We hold that the District Court did not err in awarding Patsy the cash and surrender values of these life and annuity policies, as evidence existed upon which to support the values awarded to Patsy and the District Court has broad discretion for such awards under § 40-4-202, MCA.

¶35 **4.     Did the District Court abuse its discretion in awarding Patsy $119,773.50?**

¶36 Alvin argues that "[i]t is obvious . . . that Alvin does not have $119,773.50." As such, Alvin contends that "Montana law and the Constitution do not allow a party to be ordered to pay such a large amount of money which he does not have."

¶37 Patsy argues that "[t]he District Court in the present case had substantial evidence to support its finding that Patsy 'contributed to the operation of the farm and her nonmonetary contributions as a homemaker facilitated the maintenance of the farming operation.'"

10

¶38    We reverse the District Court's findings of fact and conclusions of law regarding its distribution of the marital estate. We remand this case to the District Court for specific findings regarding whether Patsy contributed to the preservation or the appreciation of the gifted property, and if so, specifically how she contributed. Hence, because we reverse and remand this case to the District Court, we decline to address Alvin's issue regarding the monetary award, as Patsy may or may not be entitled to such an award depending upon the outcome of this case on remand.

¶39    **5.    Was the District Court's granting of a security interest in Alvin's Bartsch Farms, Inc. shares contrary to the law?**

¶40    Alvin argues that the District Court had no authority to grant to Patsy a security interest in Alvin's stock, as there is no provision in the Montana Code regarding distributions of a marital estate which order such a grant.

¶41    Patsy argues that the District Court did not abuse its discretion in granting Patsy a security interest in Alvin's stock, namely because of a district court's "equitable power to grant a security interest or equitable lien to prevent an inequitable result." Not to grant a district court the authority to enforce its judgment for an equitable division of a marital estate, Patsy contends, is to render meaningless § 40-4-202, MCA, which actually gives a district court broad discretion in equitably dividing a marital estate.

¶42    We reverse the District Court's findings of fact and conclusions of law regarding its distribution of the marital estate. We remand this case to the District Court for specific findings regarding whether Patsy contributed to the preservation or the appreciation of the

11

gifted property, and if so, specifically how she contributed. Hence, because we reverse and remand this case to the District Court, we decline to address Alvin's issue regarding the security interest, as Patsy may or may not be entitled to such a security interest depending upon the outcome of this case on remand.

## CONCLUSION

¶43 In conclusion, we affirm the District Court regarding its valuation of the Bartsch Farms, Inc. stock at $3.62 per share and the cash value and surrender value awards to Patsy. We reverse the District Court regarding its award of fifty percent of the marital assets. We remand for further proceedings to determine whether and to what extent Patsy contributed to the preservation or appreciation of the gifted property. Because we remand this case to the District Court for such findings, we do not address the issues of whether the District Court erred in awarding Patsy $119,773.50 or whether the District Court's grant of a security interest to Patsy was contrary to law.

¶44 Affirmed in part; Reversed in part; and Remanded in part for proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM RICE