FILED

07/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0696

DA 16-0696

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 167N

IN RE THE MARRIAGE OF:

JOAN SHANNON-HARR,

      Petitioner and Appellee,

  and

DARYL HARR,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR 13-285(D)
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brian Muldoon, Law Office of Brian Muldoon, P.C., Whitefish, Montana

      For Appellee:

          Joan Shannon-Harr, Self-Represented, Salinas, California

Submitted on Briefs:  June 14, 2017

Decided:  July 5, 2017

Filed:

                                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Daryl Harr appeals the Eleventh Judicial District Court's order dissolving his marriage to Joan Shannon. We affirm in part, reverse in part, and remand for further proceedings.

¶3 Daryl and Joan married in 2008 in California and separated about five years later. At the time of the parties' marriage, Daryl was a successful financial advisor with a net worth of over $3.7 million. Joan was a registered nurse earning $75,000 a year. Daryl had purchased a tract of land near Trego, Montana, and began constructing a home on the property just prior to the parties' marriage. Daryl and Joan moved to the Trego residence in 2010. After moving to Montana, Daryl largely retired and Joan's employer eliminated her telecommuting nursing position.

¶4 Apart from the Trego property, Daryl's primary assets were his home in Sacramento, California, and a promissory note from the sale of his business, worth over $650,000 at the time of trial. The 2008 recession seriously impacted Daryl's financial situation. Daryl sustained a loss on the sale of his California home, and his monthly disbursement on the promissory note reduced from $23,000 to just over $15,000 per month. At the time of trial, Daryl's first wife was garnishing fifty percent of the monthly

2

promissory note payment for back alimony payments. Daryl and Joan accumulated significant credit card debt and took out a second mortgage on the Trego property after Daryl took a loss on the sale of his California home. Daryl also accrued a substantial tax debt for failing to pay his income taxes.

¶5 In September 2013, the District Court ordered Daryl to pay Joan about $1,600 a month in temporary maintenance. The maintenance order required also that Daryl continue to make mortgage payments and all insurance and tax obligations on the Trego property. Daryl moved to modify the temporary maintenance order in March 2014, asserting that he did not have enough income to pay support to Joan. Joan filed a counter-motion to hold Daryl in contempt for his failure to pay the temporary support. The District Court denied Daryl's motion and granted Joan's motion at the close of the June 2014 trial. Daryl again moved to modify the temporary maintenance order in March 2015.

¶6 Twenty-eight months after trial, the District Court issued its findings of fact, conclusions of law, and decree of dissolution. The court determined that the Trego home should be sold and the equity divided equally between the parties after deductions for the outstanding mortgages. The court ordered Daryl to pay Joan a cash equalization payment of over $125,000. The majority of the cash equalization payment represented the court's calculation of Joan's share of the Trego home's estimated value—which the court calculated as of the time of trial. In its calculation of net worth, the court did not list any values for the assets and debts that it concluded were solely that of one party and not part of the marital estate. The court's final decree also granted Daryl's second motion to modify temporary support because Joan had obtained appropriate employment and did not show

3

that she could not be self-supporting. The court terminated Daryl's temporary support obligation effective March 1, 2015. Daryl appeals from the final decree.

¶7     Montana statute vests a district court with broad discretion to apportion a marital estate in a manner equitable to each party under the circumstances. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and the conclusions of law correct. *Funk*, ¶ 6. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *Funk*, ¶ 6.

¶8     In arguing that the District Court abused its discretion in its dissolution decree, Daryl claims that Joan expressly disclaimed any interest in the Trego residence and land during trial. He contends that the court abused its discretion in awarding Joan temporary maintenance because she was able to support herself. Daryl claims that the District Court erred in its valuation of assets. The court's error in valuing the marital estate, Daryl asserts, was compounded by the twenty-eight-month delay between the trial and the decree.

¶9     We are unpersuaded by Daryl's contention that Joan disclaimed any interest in the Trego residence and land during trial. Daryl emphasizes Joan's testimony that she was "not asking for his house." Joan did not expressly waive her right to a share of the equity in the home. In fact, Joan argued extensively in her post-trial briefing that the Trego home was a marital asset subject to equitable distribution. Daryl has failed to demonstrate that the District Court abused its discretion in rejecting his argument that Joan disclaimed any interest in the Trego residence.

¶10 Section 40-4-121, MCA, governs temporary support and provides that a court may issue an order for temporary support "[o]n the basis of the showing made and in conformity with 40-4-203." Section 40-4-121(8), MCA. Section 40-4-203, MCA, in turn, provides that a court may grant support "only if it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for the spouse's reasonable needs; and (b) is unable to be self-supporting through appropriate employment." Section 40-4-203(1), MCA.

¶11 In initially granting Joan temporary support, the court considered the fact that Joan had not worked during the majority of the marriage and had only recently begun working part-time. The court further considered Joan's expenses associated with moving out of the Trego residence. In denying Daryl's March 2014 motion to modify the temporary support order, the District Court acknowledged that Daryl's financial circumstances had changed. The court noted, however, that Daryl held "substantially all of the marital assets" and that Daryl was incurring "discretionary" expenses. Although the court recognized that Joan had the ability to generate income, it determined that Daryl could not leave Joan "in the status that [he had] left her in." The record establishes that the District Court adequately considered the parties' circumstances when it entered the temporary support order. The court gave due consideration to Daryl's motions and terminated the temporary support retroactive to March 1, 2015, based on its finding that the parties' circumstances had changed substantially by then and that Joan was able to support herself. We conclude that the District Court did not abuse its discretion in awarding Joan temporary support or in denying Daryl's first motion to modify the temporary support award.

¶12    We have made clear that in dissolution proceedings, Montana statute "obligates a court to equitably apportion between the parties all assets and property of either or both spouses, regardless of by whom and when acquired. This directive applies to all assets, including pre-acquired property." *Funk*, ¶ 19. A district court's distribution of the marital estate necessarily includes consideration of the parties' debt as well. *In re Marriage of Crowley*, 2014 MT 42, ¶ 31, 374 Mont. 48, 318 P.3d 1031. A court still may award pre-acquired property to the acquiring spouse, but all property is subject to apportionment. *Funk*, ¶ 19. In apportioning the martial estate here, the District Court did not list any values for the assets and debts that it concluded were solely that of one party and not part of the marital estate. Thus, it is difficult for this Court to determine whether the District Court equitably apportioned all property belonging to either or both parties however and whenever acquired pursuant to its obligation under Montana statute.

¶13    It is clear from the record and the briefs, however, that the Trego residence is the major asset in dispute. Of the approximately $125,000 cash equalization payment the District Court ordered Daryl to pay Joan, just over $103,000 represented Joan's share in the equity of the Trego residence. The District Court calculated the parties' equity in the Trego residence as of the time of trial—twenty-eight months before its decree of dissolution. Although "[t]he time for proper valuation cannot be tied to any single event in the dissolution process," we have stressed that it is preferable for property valuation to "occur at the time of distribution" and that "present fair market values should be used." *In re Marriage of Krause*, 200 Mont. 368, 378-79, 654 P.2d 963, 968 (1982); *accord In re*

6

*Marriage of Bartsch*, 2004 MT 99, ¶¶ 24-27, 321 Mont. 28, 88 P.3d 1263; *In re Marriage of Pospisil*, 2000 MT 132, ¶¶ 43-52, 299 Mont. 527, 1 P.3d 364.

¶14 The District Court recognized that by the time it issued its dissolution decree the Trego property was subject to a foreclosure action and that the mortgages and a number of existing liens against the property needed to be satisfied out of the proceeds. The court observed that it was "unlikely that Daryl will net anything from the ultimate sale of the Trego property." Despite this acknowledgment, however, the District Court did not review its valuation of the Trego property at the time of the distribution or the effect that the changed circumstances may have on the cash equalization payment. Given the twenty-eight month delay between the trial and the dissolution decree, both parties' arguments that the delay has gravely affected them, and the apparent changes in the status of the Trego property—the primary asset underlying the District Court's cash equalization payment—we conclude that the District Court abused its discretion in valuing the Trego property at the time of trial and not at the time of distribution.

¶15 Twenty-eight months between trial and decree is an extraordinary delay, the effect of which undoubtedly had consequences to each party in this case. Although we are reticent to prolong the delay, it is apparent here that, with the primary asset being a piece of property that was subject to foreclosure after trial, yet served as the driving factor in the cash equalization payment, it is impossible to determine the equity of the District Court's apportionment. *In re Marriage of Krause*, 200 Mont. at 379-80, 654 P.2d at 968-69 (concluding that a district court erred by failing to recognize "value fluctuations" that had occurred during the substantial period between dissolution and the time of distribution).

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, this appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.  We reverse the decree of dissolution and remand to the District Court for the sole purpose of reassessing its consideration of the Trego property and the resulting effect on distribution of the marital estate and the cash equalization payment.

/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE
/S/ DIRK M. SANDEFUR