No. 03-684

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 57

IN RE THE MARRIAGE OF

THOMAS C. OLSON,

   Petitioner and Appellant,

  and

SYDNEY OLSON,

   Respondent, Respondent and Cross-Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
       In and For the County of Yellowstone, Cause No. DR 2002-1118,
       Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     William J. O'Connor II, O'Connor and O'Connor, Billings, Montana

   For Respondent:

     Calvin J. Stacey, Stacey & Funyak, Billings, Montana

         Submitted on Briefs: May 19, 2004

           Decided: March 8, 2005

Filed:

      _____
           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Thomas C. Olson (Thomas) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, denying his motion to modify the maintenance agreement entered pursuant to the dissolution of the marriage with his former wife, Sydney Olson (Sydney). We affirm.

¶2    We address the following issues on appeal:

¶3    Did the District Court abuse its discretion in concluding that Thomas failed to meet his burden of establishing that the original maintenance agreement was unconscionable?

¶4    Did the District Court err in failing to hold a hearing and consider appropriate factors in awarding Sydney attorney fees?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Thomas and Sydney were married in 1964 and subsequently divorced in 1988. Upon dissolution of their marriage, they entered into a Property Settlement Agreement (Agreement) which included a maintenance provision stating as follows:

> Beginning December 5, 1988, [Thomas] shall pay as maintenance to [Sydney] the sum of $2,500.00 per month for a period of four years and six months . . . . Thereafter, he shall pay to [Sydney] the sum of $2,000.00 per month for an additional period of four years and six months . . . . These payments shall terminate absolutely on the death, marriage or cohabitation of [Sydney], but shall be a liability of [Thomas's] estate in the event of his death. Following the final payment of $2,000.00 per month, required above, [Thomas] shall thereafter pay maintenance of $1,500.00 per month . . . until the earliest occurrence of [Sydney's] marriage, cohabitation or death, or [Thomas's] death.
>
> When [Thomas] reaches age 65 the amount of maintenance payable to [Sydney], if any, shall be redetermined in light of the investment and other income of each party . . . .

Prior to signing the agreement, the parties crossed out the word "cohabitation" in both places where it occurs in this provision and initialed these changes, thus eliminating cohabitation as an event which would immediately terminate the maintenance payments. The agreement was then approved in that form by the District Court on November 23, 1988.

¶6　In 1993, Sydney began to cohabit with Jack Lamb (Jack) and has continuously cohabited with him since that time.

¶7　On October 18, 2002, Thomas filed a motion to modify maintenance, requesting that the District Court terminate his monthly payment obligation because Sydney's financial circumstances changed for the better, and because her relationship with Jack was essentially "like a marriage in every way other than the legal solemnization of signing a marriage license."

¶8　On September 4, 2003, the District Court issued its order denying Thomas's motion for modification and awarding $750.00 to Sydney for attorney fees and costs incurred. Judgment was entered on September 23, 2003. Thereafter, Thomas filed an appeal therefrom, and Sydney filed a cross-appeal, contending that the District Court should have awarded her a larger sum to cover her attorney fees and expenses.

## STANDARD OF REVIEW

¶9　We apply a clearly erroneous standard in reviewing a district court's findings of fact regarding maintenance modification. *In re Marriage of Schmieding*, 2003 MT 246, ¶ 14, 317 Mont. 320, ¶ 14, 77 P.3d 216, ¶ 14. Findings are clearly erroneous if they are not supported by substantial evidence, if the district court misapprehends the effect of the evidence, or if

3

our review of the record convinces us a mistake has been committed. *In re Marriage of Brown* (1997), 283 Mont. 269, 272, 940 P.2d 122, 124. We review a district court's conclusions of law to determine whether they are correct. *In re Marriage of Bartsch*, 2004 MT 99, ¶ 13, 321 Mont. 28, ¶ 13, 88 P.3d 1263, ¶ 13.

¶10 We review a district court's determinations regarding substantial and continuing changed circumstances and unconscionability for an abuse of discretion. *Schmieding*, ¶ 14. The test for an abuse of discretion is whether the trial judge acted arbitrarily, without employment of conscientious judgment, or has exceeded the bounds of reason resulting in substantial injustice. *Schmieding*, ¶ 14.

## DISCUSSION

¶11 **Did the District Court abuse its discretion in concluding that Thomas failed to meet his burden of establishing that the original maintenance agreement was unconscionable?**

¶12 The Montana Legislature has set forth the standards for modification of maintenance agreements in § 40-4-208, MCA, which provides in pertinent part:

> (2) (a) Except as provided in 40-4-251 through 40-4-258, whenever the decree proposed for modification does not contain provisions relating to maintenance or support, modification under subsection (1) may only be made within 2 years of the date of the decree.
> (b) Except as provided in 40-4-251 through 40-4-258, whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
> (i) **upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable**; [or]
> (ii) upon written consent of the parties[.]

(Emphasis added.) Section 40-4-208, MCA, does not define the term "unconscionable," and we have declined to create a definition. *Brown*, 283 Mont. at 272, 940 P.2d at 123. Instead,

4

our interpretation of unconscionability is made subject to the underlying facts on a case-by-case basis. *Schmieding*, ¶ 36.

¶13    Thomas argues that it is unconscionable to continue the allowance of maintenance payments to Sydney because: (1) she is able to meet her own financial needs and to support herself; (2) Sydney has a bachelor's degree and therefore has the ability to be employed; (3) Sydney cohabits with Jack who pays the mortgage on the home and makes all other substantial household payments; (4) Sydney owns extensive investment properties; (5) upon Jack's death, Sydney will inherit the home in which they currently cohabit; and (6) for all "practical purposes," Sydney has entered into a de facto marriage with Jack. In sum, Thomas contends that Sydney has been living a lifestyle of leisure, is essentially "married" to Jack, and that maintenance is therefore no longer necessary due to these changed circumstances. Thomas urges this Court to apply its equitable powers to "do justice" and terminate the maintenance payments.

¶14    Sydney responds by arguing that Thomas failed to introduce evidence to show a substantial change in circumstances so as to make the terms of the maintenance agreement unconscionable. Sydney contends that her circumstances have essentially remained the same for several years, with the exception that she is now sixty-years old, and it would therefore be more difficult for her to obtain employment. Sydney notes that she is not remarried and is spending all of the maintenance received on the "necessities of life." Sydney argues that, contrary to Thomas's arguments, it is Thomas's situation that recently changed when he voluntarily decided to "slow down at work" in preparation for retirement so that he could

5

"enjoy life." However, Sydney argues that none of these circumstances justify a modification of the maintenance award since Thomas is in good health and could return to work on a full-time basis.

¶15    It is undisputed that the parties voluntarily entered into the Agreement in 1988. The parties specifically considered and deleted the cohabitation provision from the Agreement. Additionally, the parties agreed that maintenance would continue until Thomas reached the age of sixty-five, at which time the District Court would re-evaluate the maintenance provisions. Hence, cohabitation, by itself, may not be asserted as an event terminating maintenance in this case. Therefore, Thomas's de facto marriage argument fails because it is uncontested that neither a marriage license nor a marriage relationship exists. Sydney's relationship with Jack thus does not trigger maintenance modification pursuant to the Agreement. Furthermore, we agree with the District Court's conclusion that Thomas's voluntary retirement is not a valid reason to discontinue maintenance payments, and, therefore, we conclude that the District Court did not abuse its discretion when it determined that the changes in circumstances here did not render the terms of the original maintenance agreement unconscionable.

¶16    Thomas next contends that the District Court erred in disallowing the use of parol evidence to explain and clarify the intention of the parties in entering the agreement. Thomas argues that the crossed-out provisions regarding cohabitation make the agreement ambiguous. Thomas takes issue with the District Court's finding that "Dr. Olson and Ms. Olson, specifically by interlineation in their agreement, considered and deleted cohabitation

6

as a basis for termination of maintenance." Thomas argues that there was nothing clear about it, nor were the notations interlineations. Thomas explains the markings were "merely an initialed crossing through the word 'cohabitation' in two places." Thomas also claims that parol evidence should be used to show that the marital estate was to be distributed equally, and that the court has the responsibility to "do right" in equity with regards to the maintenance issue.

¶17 The parol evidence rule precludes the admission of extrinsic evidence of an unambiguous integrated writing in any situation involving parties to the instrument when the rights and duties created by the document are the dispositive issue. *Habets v. Swanson*, 2000 MT 367, ¶ 24, 303 Mont. 410, ¶ 24, 16 P.3d 1035, ¶ 24. We interpret the intent of parties to a contract from only the contract when the terms are unambiguous. *Tvedt v. Farmers Ins. Group of Cos.*, 2004 MT 125, ¶ 24, 321 Mont. 263, ¶ 24, 91 P.3d 1, ¶ 24.

¶18 We conclude that the maintenance provisions at issue are clear and that the provisions crossed-out and initialed by the parties are likewise unambiguous. Based upon the plain meaning of the provisions for terminating maintenance, and consistent with our reasoning aforementioned, we conclude that extrinsic evidence may not be used to explain the intention of the parties, that the agreement provisions for terminating maintenance have not been triggered under the facts of this case, and that the District Court did not err in concluding that the circumstances did not warrant a modification of the agreement.

¶19 **Did the District Court err in failing to hold a hearing and consider appropriate factors in awarding Sydney attorney fees?**

¶20    Sydney argues that the District Court erred by not holding a hearing and considering all of the factors outlined in *Swenson v. Janke* (1995), 274 Mont. 354, 908 P.2d 678, in determining attorney fees. Sydney contends the District Court improperly "set a cap" for attorney fees at $750.00 without hearing evidence as to the amount of attorney fees incurred in the defense of this matter. Thomas responds to Sydney's cross-appeal by moving that it be dismissed for her failure to timely file her brief. However, we deny that request.

¶21    This Court will not disturb a district court's determination as to attorney fees absent an abuse of discretion. *In re Marriage of Swanson*, 2004 MT 124, ¶ 13, 321 Mont. 250, ¶ 13, 90 P.3d 418, ¶ 13. Although we have held that a district court may consider the *Swenson* factors when awarding fees in a dissolution proceeding pursuant to contract–that is, pursuant to a settlement agreement, *see In re Marriage of Mease*, 2004 MT 59, ¶ 58, 320 Mont. 229, ¶ 58, 92 P.3d 1148, ¶ 58–no such contract provision was at issue here, and the District Court thus acted pursuant to § 40-4-110, MCA, which provides that a court may discretionarily order payment of fees after considering the resources of the parties. Further, the District Court's order, after awarding fees to Sydney, added that "if a hearing on costs and attorney fees is necessary, please advise." The record reveals no request for a hearing or for consideration of additional information in response to this order. Thus, we conclude that the District Court did not abuse its discretion by failing to hold a hearing or consider the *Swenson* factors.

¶22    Affirmed.

/S/ JIM RICE

We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART