No. DA 06-0234

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 171

GERALD REISBECK,

        Plaintiff and Appellant,

   v.

FARMERS INSURANCE EXCHANGE,
TRUCK INSURANCE EXCHANGE, FIRE
INSURANCE EXCHANGE, MID-CENTURY
INSURANCE COMPANY, FARMERS NEW
WORLD LIFE INSURANCE COMPANY,
FARMERS INSURANCE GROUP,

        Defendants and Respondents.

APPEAL FROM:    The District Court of the First Judicial District,
                     In and For the County of Lewis and Clark, Cause No. CDV 2002-725,
                     Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        John C. Doubek, Doubek & Pyfer, LLP, Helena, Montana

        For Respondents:

        Mark D. Parker, Shawn P. Cosgrove, Parker, Heitz & Cosgrove, PLLC,
        Billings, Montana

Submitted on Briefs:  January 10, 2007

Decided:  July 17, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Gerald Reisbeck entered into a District Manager's Appointment Agreement and an Addendum thereto (hereinafter referred to as Agreement) with Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (the Companies) in 1974. As provided in the Agreement, the Companies retained $1,610.00 per month from his compensation. The Companies terminated Reisbeck's employment in 1999, paying him, pursuant to the Agreement, a "contract value" of approximately $836,000.00 but not paying him the "retained" funds which amounted to approximately $500,000.00. Reisbeck sued for the retained funds. The District Court granted the Companies' summary judgment motion and denied Reisbeck's claim for the monies. Reisbeck appeals. We affirm.

## ISSUE

¶2 A restatement of the issue on appeal is whether the District Court erred in granting the Companies' Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Based on a February 5, 1974, District Manager's Appointment Agreement, Reisbeck became the District Manager in Montana for the Companies on April 1, 1974. Under the Agreement the Companies agreed to pay Reisbeck an override[1] on all business produced by agents of, and written by, the Companies. Pursuant to an addendum to the

---

[1] An "override" is a commission paid to a manager on a sale made by a subordinate. *Black's Law Dictionary* 1129 (7th ed. West 1999).

Agreement signed contemporaneously with the Agreement, Reisbeck agreed to allow the Companies to retain, for an indefinite period of time, $1,610.00 per month of his monthly override. The Agreement neither explains the purpose of retaining these monies nor does it specify the intended disposition of them.

¶4     The Agreement expressly provided that it could be cancelled without cause by either the Companies or Reisbeck with thirty days written notice. It contained a clause to the effect that any prior oral agreements between the parties were superseded by the contract (a merger clause), and further provided that any modifications to the Agreement had to be accomplished in writing. Upon cancellation, the Companies had the option to either pay a "contract value" to Reisbeck or consider Reisbeck's written nomination for a successor. A formula for calculating the "contract value" was set forth in the Agreement and was based upon the service commission override paid to the district manager during the six months immediately preceding termination and the number of years of service as district manager. The Agreement repeatedly provides that the amount of compensation paid at termination would not exceed the "contract value."

¶5     On November 9, 1999, the Companies notified Reisbeck in writing that he was to be terminated on December 11, 1999. Upon termination, the Companies opted to pay Reisbeck a contract value of seven times his last six months' service commission override equaling $836,222.73. The Companies did not pay Reisbeck the funds they had retained every month during the term of Reisbeck's employment as district manager, i.e., twenty-five years and eight months. Reisbeck claims that this "retention" account contained $495,880.00, excluding interest.

¶6    On December 10, 2002, Reisbeck filed this action against the Companies.  He alleged that the Companies' refusal to pay him the retained funds constituted a breach of the written agreements as well as a breach of oral representations made to him.  He also asserted tort claims of negligence, emotional distress and breach of the covenant of good faith and fair dealing.  He sought general, compensatory, special, and punitive damages, including but not limited to repayment of the retained funds.

¶7    On September 25, 2003, the Companies moved for summary judgment.  A hearing was held on January 28, 2004, and on May 26, 2004, the District Court granted the Companies' Motion for Summary Judgment.  The court concluded that the Agreement expressly provided for termination pay and such provisions did not include payment of retained funds.  It held that because the Agreement was unambiguous, it would not consider extrinsic evidence of previous oral agreements or representations.  The court further concluded that it could not consider Reisbeck's claim that the Companies breached subsequent oral representations because the Agreement expressly required any modifications to be in writing, and no written modification to the Agreement had been executed by the parties. Lastly, the District Court concluded that Reisbeck had failed to timely assert his tort claims within the three-year statute of limitations.  Relying on *Martin v. Special Resource Mgt., Inc.*, 246 Mont. 181, 803 P.2d 1086 (1990), the court held that the statute of limitations began to run on November 9, 1999, when the Companies issued written notification to Reisbeck that he would be terminated on December 11, 1999, and therefore his tort claims were untimely.  Reisbeck appeals.

## STANDARD OF REVIEW

¶8 We review a district court's grant of summary judgment de novo, using the standard established by M. R. Civ. P. 56 (Rule 56). The moving party must establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Once the moving party has met its burden, the opposing party must, in order to raise a genuine issue of material fact, present substantial evidence essential to one or more elements of its case rather than mere conclusory or speculative statements. We review a district court's conclusions of law to determine whether they are correct. *Sands v. Town of West Yellowstone*, 2007 MT 110, ¶ 15, 337 Mont. 209, ¶ 15, 158 P.3d 432, ¶ 15 (citations omitted).

## DISCUSSION

¶9 Reisbeck argues on appeal that the District Court erred in failing to acknowledge exceptions to the parol evidence rule which would have allowed him to introduce extrinsic evidence to support his claim that the retention monies should have been paid to him.

¶10 The parol evidence rule, § 28-2-905, MCA, states:

(1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:

(a) when a mistake or imperfection of the writing is put in issue by the pleadings;

(b) when the validity of the agreement is the fact in dispute.

(2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in

5

1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.

(3) The term "agreement", for the purposes of this section, includes deeds and wills as well as contracts between parties.

As referenced in § 28-2-905(2) above, § 1-4-102, MCA, provides:

For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret.

¶11 Reisbeck claims that the Agreement which established the monthly retention requirement was vague, unilateral, and ambiguous in that it failed to explain the purpose of the retention policy, what it was designed to accomplish, and what would happen to the monies. Reisbeck further argues that while the Agreement did not indicate that the monies would be returned to him, neither did it indicate that the monies would *not* be returned to him. He asserts that it was the "custom, practice and [his] expectation that it would be paid to him" and that the District Court erred when it refused to allow him to explain this.

¶12 In support of his contention that parol evidence should have been admitted, Reisbeck relies on *United States v. Hub City Volkswagen, Inc.*, 625 F.2d 213 (9th Cir. 1980), *Danelson v. Robinson*, 2003 MT 271, 317 Mont. 462, 77 P.3d 1010, and *Weinberg v. Farmers State Bank of Worden*, 231 Mont. 10, 752 P.2d 719 (1988). These cases are distinguishable and inapposite. In *Hub City*, the Ninth Circuit acknowledged that an exception to the parol evidence rule allowed introduction of extrinsic evidence to show that a "written contract never became effective because it was contingent upon the

6

happening of some future event." *Hub City*, 625 F.2d at 214. Reisbeck does not argue that the contract under which he and the Companies operated for more than twenty-five years never went into effect. Because he is not attempting to prove that the Agreement never became effective, the exception to the parol evidence rule recognized in *Hub City* is not applicable.

¶13 In *Danelson*, the buyers of real property under a contract for deed were allowed to present extrinsic evidence that the sellers had temporarily waived their contractual right to foreclose based upon their oral promise to give buyers more time to make a required installment payment. *Danelson*, ¶ 21. The buyers did not argue that the sellers had no contractual right to foreclose; they simply argued that they had agreed not to do so for a period of time. Significantly, there is no indication in *Danelson* that the contract required that any modifications had to be in writing, while here, pursuant to the Agreement's clear terms, a writing was the only way to accomplish a modification to the Agreement's terms. While Reisbeck argues that the Companies repeatedly "promised" to return the retained funds to him, he runs squarely into the parol evidence rules regardless of when such promises were proffered—if before the Agreement was signed, evidence of the promises is precluded because of the Agreement's merger clause; if after the Agreement was signed, such promises would constitute a modification which—under the Agreement—had to be in writing. In that the contract in *Danelson* apparently contained no similar constraints, Reisbeck's reliance on it is misplaced.

¶14 Likewise, *Weinberg* does not apply. In *Weinberg*, we determined that the borrowers were not trying to vary the terms of their promissory note but rather were

7

contending that the "note itself, in all its terms, is evidence of an agreement between the Bank and the Weinbergs that a line of credit would be extended to them for seven years at an interest rate of 9.5 percent." *Weinberg*, 231 Mont. at 24, 752 P.2d at 728. Unlike the Weinbergs, Reisbeck is in fact trying to vary the terms of the Agreement—he seeks to add a critical and significant payment provision which the Agreement simply does not contain.

¶15 Reisbeck also relies on § 1-4-102, MCA, set forth verbatim at ¶ 10. In our recent decision in *Baker Revocable Trust v. Cenex Harvest States, Cooperative, Inc.*, 2007 MT 159, ___ Mont. ___, ___ P.3d ___, we analyzed the history of § 1-4-102, MCA, to determine whether ambiguity of a contract was a prerequisite to the application of § 1-4-102, MCA. We noted in *Baker* that "ambiguity exists only if the language [of an instrument] is susceptible to at least two reasonable but conflicting meanings." *Baker*, ¶ 20 (citations omitted). We determined that the circumstances under which a contract is made may be shown and considered to aid the court in determining, as a preliminary matter, whether the instrument contains an ambiguity. *Baker*, ¶ 53. We cautioned, however, that such a determination does not make all "circumstances" admissible for that purpose, and "objective" evidence only would be admitted. Therefore, pursuant to *Baker*, which was decided while Reisbeck's case was pending on appeal, it is not necessary that a contract be ambiguous before parol evidence under § 1-4-102, MCA, is allowed—such parol evidence can be admitted to determine *if* the contract is ambiguous.

¶16 As noted above, the District Court expressly concluded that the Agreement between Reisbeck and the Companies was not ambiguous. We must agree. The

language of the Agreement is susceptible to one interpretation only, and given the presence of a merger clause and the express provisions regarding modification, we cannot conclude that parol evidence should be admitted in an effort to inject ambiguity where there is none. While, as Reisbeck correctly points out, the Agreement does not explain the purpose or ultimate disposition of the retained funds, the fact remains that it provides a precise formula for calculating the monies to be paid to Reisbeck upon termination, and that formula does not contemplate or even mention the inclusion of any retained funds. In fact, the Agreement gives the Companies the option to have Reisbeck pursue termination pay through a nominee ultimately selected by the Companies to replace him, in lieu of paying him the "contract value." Given the specificity of these provisions for payment upon termination of the Agreement, we simply cannot agree that parol evidence is needed to explain what was clearly intended.

¶17     If the Companies indeed led Reisbeck to believe that he would be paid those retained funds, this result is—to say the least—unfortunate for Reisbeck. However, we cannot fault the District Court for its legally sound determination because its legal conclusions were in fact correct. See ¶ 7. Reisbeck signed the Agreement authorizing the Companies to retain $1,610.00 indefinitely from his monthly compensation, and making absolutely no provision for the disposition of such sums. If the Agreement's failure to explain the purpose and the ultimate disposition of these funds was a cause of concern to Reisbeck, he should have addressed it when the Agreement was made, or sought written modification at some point over the life of the contract. This Court faced

9

a similar harsh reality in *Hein v. Fox*, 126 Mont. 514, 254 P.2d 1076 (1953) when we explained:

> Courts can give no solace where parties to a contract find themselves minus expected profit through failure to exercise care in drawing up such contract. What this court said in Hinerman v. Baldwin, 67 Mont. 417, 433, 215 P. 1103, 1108, well applies here, viz: "There is no legal impediment shown which would prevent the parties from entering into any contract which they saw fit nor from expressing it in language of their own, and under such circumstances it is the duty of the court to give effect to the meaning and intention of the parties as expressed in the language employed. The court has no right to make a contract for the parties different from that actually entered into by them. 'Courts enforce contracts as made, unless good morals or public policy are contravened. They cannot create a new contract, nor can they permit the parties themselves to do so without the consent of all, upon any theory that the original contract was not the most beneficial or advantageous . . . .' "

As noted by the District Court, Reisbeck does not allege that there was any contravention of public policy underlying his termination.

¶18 Because the failure to pay him the retention funds is the operative claim of Reisbeck's Complaint and we have determined on the merits that Reisbeck is not entitled to such funds, we decline to address Reisbeck's claim that the District Court erroneously used November 9, 1999, as the date on which the statute of limitations began to run.

## CONCLUSION

¶19 We conclude that Reisbeck failed to establish a genuine issue of material fact, and we further conclude that the District Court's legal conclusions were correct. For the foregoing reasons, we affirm the decision of the District Court.

/S/ PATRICIA COTTER

10

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE